## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| *HAROLD E. MOOERS,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 08-107-B-W* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

## REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal contends that the administrative law judge was required to call a medical expert to testify at the hearing and otherwise further develop the record as to the date of onset of his disability and that he failed to evaluate the plaintiff's credibility correctly. This case involves only the period from the alleged onset date, September 15, 2002, through May 31, 2006, the effective date from which benefits have been awarded. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation procedure, 20 C.F.R. §§ 404.1520. 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the medical record

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 17, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

established the presence of lumbar degenerative disc disease, degenerative joint disease of the left shoulder, ulnar neuropathy at the elbows, and migraine headaches, impairments that were severe but which did not meet or equal the criteria of any impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404 (the "Listings"), Findings 3-4, Record at 255; that the plaintiff's testimony concerning pain and its resulting limitations was not supported by the medical evidence prior to June 2006 and was not credible "to the extent of establishing an inability to work prior to that time," Finding 5, *id.*; that, prior to June 1, 2006, the plaintiff retained the residual functional capacity to perform a wide range of work at the light exertional level, with additional restrictions on the use of his upper extremities that limited him to lifting or carrying 10 pounds occasionally and reaching only occasionally, Finding 6, *id.*;  that the plaintiff was unable to perform his past relevant medium-to-heavy work as a dump truck driver, wooden fence builder, leather mill machine operator, tire changer, or dairy farm laborer, but retained the residual functional capacity to perform light work jobs that existed in significant numbers in the national economy, within the framework of Rules 202.28, 202.21, 202.25 and 202.18 of Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid"), Findings 7-8, *id.* at 255-56; and that he accordingly was not disabled, as that term is defined in the Social Security Act, from September 15, 2002 through May 31, 2006, Finding 9, *id.* at 256.  The Appeals Council declined to review the decision, *id.* at 233-35, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the

determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual functional capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## Discussion

The plaintiff asserts that an EMG study on which the administrative law judge relied in determining that the plaintiff was disabled as of June 1, 2006, "diagnosed a condition that certainly pre-existed that date." Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 9) at 4. He cites no authority for the assertion that the mild to moderate ulnar neuropathy diagnosed after an EMG study in June, 2006 "certainly pre-existed that date," nor does he mention the fact that the neuropathy must also have been severe as of the alleged onset date, September 15, 2002, in order to entitle him to move beyond Step 2 of the sequential evaluation process in his claim for benefits beginning on that date.

The administrative law judge found as follows, in relevant part:

> There is no medical evidence from the claimant's alleged onset date of September 15, 2002 until an August 30, 2003 emergency room visit . . . regarding treatment for abdominal pain/gastric problems.
> * * *
> October 2003 to November 2004 medical records from John Garofalo, M.D., the claimant's treating family practitioner . . . documented

3

treatment for complaints of low back pain, left shoulder pain (he is left-handed), GERD, and headaches. He examined the claimant on October 2, 2003 due to complaints of back and left shoulder pain, and noted that he was tender at L-4 and in the L-4 left paraspinous area, and had pain symptoms in the anterior left shoulder. Range of motion and strength testing were normal in the right upper extremity and both lower extremities. Dr. Garofalo gave a diagnostic assessment of herniated lumbar disc, left arm pain, and duodenal ulcer. He ordered x-rays of the left shoulder which demonstrated minimal early degenerative changes at the acromioclavicular joint. There was no fracture or dislocation and no soft tissue findings. Subsequent office visits in October and November 2003 were due to ongoing complaints of low back pain and left shoulder pain. In February 2004, the claimant reported to Dr. Garofalo that his left shoulder pain had improved (Exhibit 3F). In March 2004, a lumber MRI showed only degenerative disc disease at L3-4 and L5-S1, with no herniation (Exhibit 7F, page 42). Soon after, the claimant reported that his low back pain symptoms had improved. In April 2004, Dr. Garofalo said that the claimant was not motivated to continue in physical therapy even though he has recommended this ongoing treatment. An office visit two and one-half weeks later revealed that the claimant had been able to do some raking although he did experience numbness in his hands. In May 2004, Dr. Garofalo said that Ultram seemed to be helping with the claimant's chronic back pain. The claimant complained of headaches at that time and again during an August 2004 office visit. He was seen in October and November 2004, primarily for back pain, diagnosed by Dr. Garofalo as degenerative joint disease of the lumbar spine with chronic back pain, unchanged (Exhibit 7F). It is significant that nothing in Dr. Garofalo's medical notes shows any severe, prolonged limitations.

Record at 248. Similar complaints, as well as gallbladder surgery, are recounted for the remainder of 2004 and for 2005. *Id*. at 249.

The next mention of numbness in the plaintiff's hands appears in the December 2005 records of Tanya Campus, M.D., which reflect that the plaintiff felt that this numbness "could wait to be evaluated." *Id*. at 352. State-agency physicians who reviewed the plaintiff's medical records before the EMG study was done assigned the plaintiff a residual functional capacity for medium-level work with some limitations due to his left shoulder pain. *Id*. at 342-49, 355-62.

Social Security Ruling 83-20, on which the plaintiff relies, Itemized Statement at 2-3, instructs that

4

> [i]n disabilities of nontraumatic origin, the determination of onset
> involves consideration of the applicant's allegations, work history, if
> any, and the medical and other evidence concerning impairment severity.
> The weight to be given any of the relevant evidence depends on the
> individual case.

Social Security Ruling 83-20 ("SSR 83-20"), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 50.[2]  The date alleged by the claimant should be used "if it is consistent with all the evidence available." *Id.* at 51.  "[T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Id.* "The medical evidence serves as the primary element in the onset determination." *Id.* at 50. According to SSR 83-20, "it may be possible," but only "[i]n some cases," for the administrative law judge to use the medical evidence of record "to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination." *Id.* at 51. Such a determination "must have a legitimate medical basis;" it is necessary to call on the services of a medical advisor in such circumstances.  *Id.*  Reports of the plaintiff himself do not constitute medical evidence.  *See Watson v. Astrue*, 2007 WL 951387 (D. Me. Mar. 27, 2007), at *2; *Richards v. Barnhart*, 200 WL 2677206 (D. Me. Nov. 23, 2004), at *3.

SSR 83-20 also contemplates the possibility that the available medical evidence will not yield a reasonable inference about the progression of a claimant's impairment.  *Id.*  In such a case, "it may be necessary to explore other sources of documentation" such as information from family members, friends, and former employers of the claimant.  *Id.*  The impact of lay evidence

---

[2] While the plaintiff's itemized statement references "an on-the-job accident in 1998" and his complaint that pain and "dysfunction" in his left shoulder and arm thereafter "got progressively worse and prevented him from working from the fall of 2002," Itemized Statement at 2, he quotes language from SSR 83-20, *id.* at 3, that expressly addresses only disabilities of nontraumatic origin.  SSR 83-20 at 50-51.  At oral argument, counsel for the plaintiff asserted that, while the neuropathy "seems to relate back to" the 1998 accident, "we are not trying to prove anything about that injury" and that SSR 83-20 applies whenever benefits have been granted prospectively for a given impairment.

on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record.  *Id*. at 52.

It is necessary that the evidence establish both that one or more of the impairments found to be severe as of June 1, 2006 existed on or before September 15, 2002 and that the impairment was also severe as of the alleged onset date.  *See Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991) (retrospective diagnosis of PTSD without evidence of actual disability is insufficient).

The only impairment for which the plaintiff makes this two-fold claim is the ulnar neuropathy at the elbows which was diagnosed by the EMG study performed on June 21, 2006.  Itemized Statement at 4.  The plaintiff emphasizes the medical evidence that appears to relate to this impairment in an extensive discussion.  *Id*. at 4-9.  But he makes no attempt to show that this impairment was by its very nature "slowly progressive" beyond a conclusory assertion that it "certainly pre-existed" the date on which the study was performed.  *Id*.  That is not sufficient to impose any further duties on the administrative law judge under SSR 83-20.  The plaintiff must provide some medical evidence both of the existence of that impairment and of its severity before June 1, 2006.  Only where there is some medical evidence that would allow the drawing of an inference about the date of onset of the impairment at issue is the administrative law judge required to consult a medical advisor at the hearing or to seek out other medical and non-medical evidence that has not been presented by the plaintiff.[3]  *Morse v. Barnhart*, 2003 WL 22960433 (D. Me. Dec. 16, 2003), at *2.

Ulnar neuropathy, also called cubital tunnel syndrome, is a complex of symptoms resulting from injury or compression of the ulnar nerve at the elbow, with pain and numbness along the ulnar aspect of the hand and forearm, and weakness in the hand.  *Jones v. Secretary of*

---

[3] I note that the plaintiff was represented at the hearing before the administrative law judge by the attorney who continues to represent him here.  Record at 415.

*Dep't of Health & Human Servs.*, 2006 WL 2052379 (Fed. Cl. July 5, 2006), at *4 n.7.  Thus, only medical evidence of weakness, pain, or numbness in the plaintiff's hands and forearms would be appropriate in this case as triggers of the additional responsibilities imposed by SSR 83-20.  The administrative law judge mentioned the plaintiff's report to his treating physician of numbness in his hands after raking in April or May 2004 and his December 2005 report to a new treating physician of numbness in his elbows down to his hands that could wait to be evaluated. Record at 248, 250.  To this the plaintiff adds his report to another treating physician in February 2006 that he was "having intermittent tingling and numbness up from 4th and 5th fingers to bilat[eral] elbows, worsening somewhat."  Record at 369.  No testing was done and no medication or other treatment was prescribed as a result of these self-reports, and they cannot constitute the medical evidence necessary to require the administrative law judge to inquire further as to onset date.  The same is true for the plaintiff's self-reports of numbness recited in his itemized statement, none of which were made to a medical provider.[4]  Itemized Statement at 10-11.

The first record of medical testing and diagnosis with respect to the ulnar neuropathy in the record occurs on February 17, 2006, when Dr. Benjamin Brown notes that he found "tingling over ulnar distribution with tinel's testing, negative phelan's sign," and diagnosed "ulnar neuropathy, bilateral" as a "new problem."  *Id.* at 370.[5]  This is medical evidence, but it does not suggest the existence of a severe impairment before that date.  Indeed, no treatment was prescribed for the ulnar neuropathy at this time; Dr. Brown notes: "At this point, hold off on

---

[4] The reference to the plaintiff's complaint of weakness in his left hand in Dr. Keenan's report of a consultative examination dated November 13, 2005, on which the plaintiff also relies, Itemized Statement at 11 n.15, is clearly to weakness resulting from "[l]umb[r]osacral pain disorder/left shoulder disorder status post trauma."  Record at 333-34.  The brief mention of this weakness cannot reasonably be read as medical evidence of an ulnar neuropathy.

[5] I note that as of January 14, 2005, the plaintiff denied any numbness when questioned by his then-treating physician.  Record at 200.

further testing for neuropathy, consider if symptoms worsen." *Id*. at 371.  Dr. Brown did
conclude that the ulnar neuropathy had worsened when he saw the plaintiff on May 30, 2006, *id*.
at 374, but that is two days before benefits were initiated.

   At most, therefore, the administrative law judge failed to consult a medical advisor[6] and
to attempt to expand the evidence concerning the plaintiff's ulnar neuropathy for the three and
one-half month period between February 17, 2006 and May 31, 2006, the last day before benefit
payments were initiated.   While the question is close, I conclude that the lack of treatment of the
newly-diagnosed impairment by Dr. Brown from February 17 to May 30, 2006, when he first
ordered EMG testing, means that the ulnar neuropathy cannot reasonably be considered to have
been a severe impairment, one that significantly limits the physical or mental ability to do basic
work activities, 20 C.F.R. §§ 404.1521(a), 416.921(a), until May 31, 2006.   The plaintiff
therefore is not entitled to remand on this basis.

   In a brief section of his itemized statement, the plaintiff also contends that the
administrative law judge's assessment of his credibility with respect to the extent of his
symptoms before June 2006 was not supported by "evidence of record."  Itemized Statement at
11.  He cites Social Security Ruling 96-7p as authority for his contention that the administrative
law judge did not consider the entire record in determining his credibility because he discounted
the plaintiff's testimony solely because it was not substantiated by objective medical evidence.
With respect to the record, the plaintiff mentions only the administrative law judge's "failing to
consider the record from the perspective of Social Security Ruling 83-20," Itemized Statement at
12, suggesting strongly that he refers only to his testimony about the ulnar neuropathy.  I have
already discussed the administrative law judge's treatment of that issue, and, if the plaintiff

---

[6] *But see Morse v. Barnhart*, 2003 WL 22960433 (D. Me. Dec. 16, 2003), at *2 (need to consult medical advisor
arises only when medical evidence would allow drawing of inference about onset).

testified about pain or other limitations on his ability to work due to the ulnar neuropathy before May 30, 2006, I can only agree with the administrative law judge that the objective medical evidence would not support such testimony.  My review of this argument is hampered by the fact that the plaintiff does not point to the testimony that he contends should have been credited by the administrative law judge.  When asked to do so at oral argument, counsel for the plaintiff only responded that he "find[s] it strange that the plaintiff was credible the day after the date of the award but not credible the day before."  Similarly unhelpful was counsel's assertion, not supported by the record, that the plaintiff's 18 visits to Dr. Garofalo over a period of 24 months were "ignored" by the administrative law judge.   Finally the plaintiff also argued that the administrative law judge's credibility finding had "no detail," but sufficient detail on this point is included in the administrative law judge's opinion.  Record at 253.

On the showing made, the plaintiff is not entitled to remand based on the administrative law judge's assessment of his credibility.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 5th day of November, 2008.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge